IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 10, 2012

## IN RE: CHYNA L.M.D.

**Appeal from the Juvenile Court for Knox County**
**No. 94713     Tim Irwin, Judge**

**No. E2012-00661-COA-R3-PT - Filed August 31, 2012**

The State of Tennessee Department of Children's Services ("DCS") filed a petition seeking to terminate the parental rights of Anthony P.D. ("Father")[1] to the minor child Chyna L.M.D. ("the Child"). After a trial, the Trial Court entered its judgment finding and holding that clear and convincing evidence of grounds existed to terminate Father's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and § 36-1-102(1)(A)(iv), and that the termination was in the Child's best interest. Father appeals to this Court. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and JOHN W. MCCLARTY, J., joined.

Gregory E. Bennett, Seymour, Tennessee, for the appellant, Anthony P.D.

Robert E. Cooper, Jr., Attorney General and Reporter; and Mary Byrd Ferrara, Assistant Attorney General for the appellee, State of Tennessee Department of Children's Services.

---

[1]The Child's biological mother surrendered her parental rights to the Child and is not involved in this appeal.

## OPINION

## Background

DCS sought to terminate Father's parental rights to the Child upon the ground of abandonment by exhibiting wanton disregard for the welfare of the Child. The case proceeded to trial and Father, who was incarcerated at the time, took part in the proceedings by telephone.

Father admitted during his testimony that he was in prison serving a sentence for aggravated assault as a result of his shooting a minor three times in April of 2007. Father served one year in prison and then in September of 2008 was released on probation. While on probation, Father began a relationship with the Child's mother who became pregnant with the Child.

Father admitted that he violated his probation by failing to appear in court in February of 2009 on a charge of driving without a license. Father also admitted that when tested in March of 2009, he tested positive for cocaine and marijuana.

After Father violated his probation, although not technically eligible due to the violent nature of his assault crime, Father was approved to participate in the Community Alternatives to Prison Program ("CAPP"). In order to participate in CAPP, Father had to agree to certain conditions, which included living in a halfway house and getting substance abuse and mental health treatment. Father testified at trial that he agreed that he would do the things required by CAPP. The enhanced probation through CAPP would have allowed Father to remain out of prison.

Father appeared in Knox County Criminal Court in July of 2009, and his behavior in court caused CAPP to withdraw the offer of enhanced probation. In July of 2009, Father's probation was revoked, and he was sent to prison to serve the remainder of the sentence on his assault charge. The Child was born approximately two months later.

After trial, the Trial Court entered its Termination of Parental Rights and Final Decree of Guardianship on April 3, 2012 terminating Father's parental rights to the Child after finding and holding, *inter alia*:

> 1. On April 18, 2007, [Father] shot [T. M.], then a minor, three times. He was arrested a few days later. On December 10, 2007, he submitted to a plea of aggravated assault (reduced from a charge of attempted first degree murder) and received a sentence of eight years split confinement. He was to serve one

year in the Knox County Detention Facility and the remaining seven years on probation.

2. [Father] was released back into the community on September 20, 2008. About a month later he began a relationship with [the Child's mother]. He recalls that her son, … was about two weeks old. He engaged in unprotected sexual intercourse with her until he was arrested for violation of probation on March 29, 2009. He had been arrested a month earlier for failure to appear on a charge of driving without a license, he had failed to maintain employment as required, and he had tested positive for marijuana and cocaine on March 10, 2009.

3. [Father] was referred for consideration by Enhanced Probation and the Community Alternatives to Prison Program (CAPP). He reported that he had used marijuana and cocaine until his arrest, and identified them as his drugs of choice. He admitted that he needed "some serious help". He was advised that although he was not technically eligible for these programs due to the violent nature of his offense, he would be accepted upon condition that he first complete an inpatient substance abuse program and then reside in an approved halfway house, and that he participate in mental health treatment. He agreed to those conditions.

4. While [Father] was held at the Knox County Detention Facility waiting for hearing on the warrant to violate probation he learned that [the Child's mother] was pregnant with his child.

5. On July 1, 2009, [Father] appeared in Knox County Criminal Court. His behavior during that hearing resulted in both Enhanced Probation and CAPP withdrawing their acceptance upon finding that his behavior did not reflect amenability to supervision. The Court revoked his probation and [Father] was immediately transferred to the Tennessee State Penitentiary to serve his full sentence (with jail credit being given for 283 days). He has been in the custody of the Tennessee Department of Correction continuously since then.

6. [Father] may not have known that his girlfriend was pregnant with his child prior to his arrest for violation of probation in March 2009. He certainly knew that this was possible. He was well aware of the natural consequences of unprotected sex and the likely outcome. On July 1, 2009, the day of his hearing in Criminal Court, he certainly knew that [the Child's mother] was carrying his child. He remembers talking to the infant and patting the child

while "in the mother's stomach." He knew that he was facing a sentence of more than seven years imprisonment (taking into account his previous jail credits) and that any opportunity he might have to participate in raising his child depended upon remaining in the community. He nevertheless behaved in such a manner that he lost his acceptance into Enhanced Probation, he lost his acceptance into CAPP, and he was sent directly [to] prison.

7. … On July 1, 2009, [Father] willfully acted in such a manner that he was sent to prison, where he remains. He engaged in those acts when he admits he knew that the child's mother was pregnant with his child. [The Child] was born only two months later.

8. Upon these facts, the Court finds that prior to incarceration, [Father] engaged in conduct which exhibits a wanton disregard for the welfare of the child.

* * *

1. Due to his own conduct, [Father] has not been able to maintain regular visitation or other contact with the child and no meaningful relationship has otherwise been established between [Father] and the child. A change of caretakers and physical environment from the prospective adoptive home where she is being raised with her half-brother is likely to have a detrimental effect on the child's emotional, psychological and medical condition. [Father] is currently imprisoned for a violent act and for the use of illegal drugs. Due to his imprisonment, [Father] has never contributed anything toward the support of this child.

2. The child's mother has surrendered her parental rights.

3. The Department of Children's Services has made reasonable efforts toward achieving permanency for this child.

4. The child is entitled to a safe, secure and loving home. She is thriving in a prospective adoptive home where she is being raised with her older half-brother. She has been in this home since she entered foster care more than a year ago. She is doing so well that she has been discharged from therapy.

5. It is, therefore, in the best interest of [the Child] and the public that all of [Father's] parental rights to this child be terminated and the complete custody,

control, and full guardianship of the child be awarded to the State of Tennessee, Department of Children's Services, with the right to place her for adoption and to consent to such adoption in loco parentis.

Father appeals to this Court.

## Discussion

Although not stated exactly as such, Father raises two issues on appeal: 1) whether the Trial Court erred in finding that clear and convincing evidence existed of grounds to terminate his parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and § 36-1-102(1)(A)(iv); and 2) whether the Trial Court erred in finding that the termination of Father's parental rights to the Child was in the Child's best interests.

Our Supreme Court reiterated the standard of review for cases involving termination of parental rights stating:

> This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

In *Department of Children's Services v. D.G.S.L.*, this Court discussed the relevant burden of proof in cases involving termination of parental rights stating:

> It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying

such termination under the applicable statute." *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).

Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c).

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 Tenn. App. LEXIS 941, at **16-17 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed*. Clear and convincing evidence supporting any single ground will justify a termination order. *E.g., In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

We first consider whether the Trial Court erred in finding that clear and convincing evidence existed of grounds to terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and § 36-1-102(1)(A)(iv). In pertinent part, Tenn. Code Ann. § 36-1-113(g) provides:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;

Tenn. Code Ann. § 36-1-113(g)(1) (2010).

Tennessee Code Annotated § 36-1-102(1)(A)(iv) provides:

(1)(A) For purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, "abandonment" means that:

* * *

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child; ….

Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2010).

The Trial Court found by clear and convincing evidence that Father had exhibited a wanton disregard for the welfare of the Child when he behaved in a manner during a court hearing that caused him to lose his acceptance into CAPP and resulted in his being sent back to prison. The evidence in the record on appeal shows that Father was out on probation prior to the birth of the Child. The evidence also shows that Father violated his probation, but was offered an alternative to being sent back to prison, which would have allowed Father to remain in the community where he could participate in the Child's life. The record further reveals that Father's own actions taken while Father knew that the Child's mother was pregnant with his baby insured that the offer of enhanced probation would be withdrawn and that Father would be sent back to prison. Such behavior exhibits a wanton disregard for the welfare of the Child. The evidence does not preponderate against the Trial Court's finding by clear and convincing evidence that grounds existed to terminate Father's parental rights to the Child pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and § 36-1-102(1)(A)(iv).

Next, we consider whether the Trial Court erred in finding that the termination of Father's parental rights to the Child was in the Child's best interests. With regard to best interest, the Trial Court specifically found by clear and convincing evidence that:

Due to his own conduct, [Father] has not been able to maintain regular visitation or other contact with the child and no meaningful relationship has otherwise been established between [Father] and the child. A change of

caretakers and physical environment from the prospective adoptive home where she is being raised with her half-brother is likely to have a detrimental effect on the child's emotional, psychological and medical condition. [Father] is currently imprisoned for a violent act and for the use of illegal drugs. Due to his imprisonment, [Father] has never contributed anything toward the support of this child.

\* \* \*

The child is entitled to a safe, secure and loving home. She is thriving in a prospective adoptive home where she is being raised with her older half-brother. She has been in this home since she entered foster care more than a year ago. She is doing so well that she has been discharged from therapy.

The evidence in the record on appeal does not preponderate against these findings made by the Trial Court by clear and convincing evidence.

Given all of the above, we find no error in the Trial Court's termination of Father's parental rights to the Child, and we affirm the Trial Court's April 3, 2012 Termination of Parental Rights and Final Decree of Guardianship.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the the appellant, Anthony P.D.

_____
D. MICHAEL SWINEY, JUDGE